IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY HECKMAN, et al.**,<br><br>    Plaintiffs,<br><br>    *v.*<br><br>**SAMSUNG ELECTRONICS AMERICA, INC., et al.**,<br><br>    Defendants. | **CIVIL ACTION**<br><br>**NO. 24-6835-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                                    February 5, 2026

Sometimes two bites at the apple are enough.  Plaintiffs Emily Heckman and Jordan Gorsuch previously brought claims against Defendants Samsung Electronics America, Inc. ("SEA") and Best Buy Stores, L.P. ("Best Buy") (collectively, "Defendants") based on the inadvertent activation of the burner knobs on Plaintiffs' oven range.  (Doc. No. 1-3.)  On August 11, 2025, this Court issued a Memorandum and Order dismissing Plaintiffs' negligence, strict liability, and breach of warranties claims, but providing Plaintiffs leave to amend almost all of them.  (Doc. Nos. 32, 33.)  Plaintiffs then filed an Amended Complaint reasserting most of the dismissed claims.  (*See* Doc. No. 34.)  Defendants have now moved to dismiss a portion of the amended claims (Counts I–VI).  (Doc. Nos. 41, 45.)  Specifically, Defendants seek to dismiss the portions regarding "a manufacturing defect or breach of warranty."  (Doc. No. 41 at 7.) Plaintiffs oppose the motion.  (Doc. No. 44.)  For the reasons discussed below, the Court grants Defendants' motion and dismisses these parts of Plaintiffs' claims without leave to amend.[1]

---

[1] The Court resolves this motion on the papers.  *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); L. Civ. R.

I.  **FACTUAL BACKGROUND**

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.[2] At some point prior to January 17, 2023, Plaintiffs purchased an oven range manufactured by SEA from Best Buy. (Doc. No. 34 ¶¶ 3, 13.) Subsequently, they used the range for cooking and "not for any other purpose." (*Id.* ¶ 14.) On or about January 17, 2023, they "placed food on the stovetop of the subject range" and then their "pet dog [] attempt[ed] to get to the food" and "made inadvertent contact with the front mounted control knobs for the subject range[.]" (*Id.* ¶¶ 16–17.) This contact "caused the subject range's surface heating element to actuate," and the "heat from the burner ignited combustibles at or near the stove causing fire damage[ ]" to Plaintiffs' property. (*Id.* ¶ 17.) There were no witnesses and "no [human] was present" at Plaintiffs' property "during the initiation of the blaze." (*Id.* ¶¶ 15, 17.)

As determined by a "subsequent investigation conducted after the loss," a "malfunction and/or design defect" in the oven range caused this unintentional activation of the burner control knobs. (*Id.* ¶¶ 18.) The defect was that (1) the "front-mounted knobs" were able to be "turned 'on' with one continuous motion" instead of "two discrete actions" and (2) the oven range "did not have any guards over the knobs" or other "effective barrier between a user and the knobs." (*Id.* ¶¶ 19–20.) Plaintiffs allege Defendants were "well aware" of this defect due to a "voluntary recall" of the subject range by SEA "issued in conjunction with the [United States] Consumer Product Safety Commission" due to "[f]ront-mounted knobs . . . [that] can be activated by

---

7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.").

[2] "The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

accidental contact by humans or pets, posing a fire hazard." (Doc. No. 34 ¶¶ 21–22.) Plaintiffs also point to the safety standard guidelines of Underwriters Laboratory ("UL"), which recommend "two operations to activate" an oven range, as further evidence of Defendants' prior knowledge of this defect. (*Id.* ¶ 25.) Plaintiffs seek to recover for the fire damage to their property resulting from this unintentional operation of their stovetop, and bring claims for negligence, strict liability, and breach of warranty (Counts I–VI). (*Id.* ¶¶ 30–69.)

II.     **PROCEDURAL HISTORY**

Plaintiffs originally filed this action in the Court of Common Pleas of Philadelphia County. (Doc. No. 1.) SEA timely removed the case to this Court. (*Id.*) SEA then filed a motion to dismiss in part on January 29, 2025, which this Court granted. (Doc. Nos. 16, 17, 23, 24, 32, 33.) The Court found that Plaintiffs had insufficiently pleaded (1) their negligence causes of action[3] due to various "factual deficiencies" and a lack of causation; (2) their strict liability causes of action due to a "lack[] of sufficient allegations as to causation and the nature of the manufacturing and failure to warn defects;" and (3) their breach of warranties causes of action due to their failure to allege Defendants "breached any warranty, whether express or implied." (Doc. No. 32.) The Court dismissed the relevant claims against all non-moving Defendants as well, but allowed Plaintiffs leave to amend. (*Id.* at 21.)

Plaintiffs filed their Amended Complaint on August 25, 2025. (Doc. No. 34.) The Amended Complaint again brings claims of negligence and strict liability, but this time only alleges a breach of one warranty, the implied warranty of merchantability, against both

---

[3] As the Court discussed in its prior Memorandum dismissing Plaintiffs' claims, the original negligence claims were a "kitchen-sink pleading asserting every defect theory imaginable." (Doc. No. 32 at 4.) The Court allowed Plaintiffs leave to amend all of their negligence claims except for their negligent failure to inspect and/or test claim, which is not a viable cause of action under Pennsylvania law. (*Id.* at 11.)

3

Defendants. (*Id.*) Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss portions of the claims against them (Counts I–VI). (Doc. No. 41.) Specifically, Defendants argue that Plaintiffs have failed to plead sufficient facts to show (1) negligence due to a manufacturing defect; (2) strict liability due to a manufacturing defect; and (3) a breach of the implied warranty of merchantability. Plaintiffs oppose the motion. (Doc. No. 44.) And Defendants have filed a reply in support. (Doc. No. 45.)

### III. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, a complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 at 555. And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Although the Court must accept as true the allegations in the complaint and all reasonable inferences therefrom, *Phillips*, 515 F.3d at 228, the Court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

allegation," *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation omitted); *see Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (cleaned up)).

## IV.  DISCUSSION

Defendants contend that even after amendment, Plaintiffs have failed to plead sufficient facts for their manufacturing related claims. (*See generally* Doc. Nos. 41, 45.) So, they ask the Court to "narrow the claims at issue" here to those based only upon an alleged design defect in SEA's oven range, and not any manufacturing defect. (*See* Doc. No. 41.) In support, they advance arguments against each of the three claims at issue. First, Plaintiffs have pleaded only conclusions—and no facts—that support their belief that Defendants negligently manufactured the subject range. (*Id.* at 9–12; Doc. No. 45 at 4–6.) Second, Plaintiffs' strict liability claim, premised on a defective manufacturing theory, is merely their deficient negligent manufacturing claim recast as strict liability. (Doc. No. 41 at 12–14; Doc. No. 45 at 4–6.) Third, Plaintiffs' breach of the implied warranty of merchantability claims lack any supporting factual allegations and again merely parrot the legal standards for such claims. (Doc. No. 41 at 14–15; Doc. No. 45 at 6–7.) The Court agrees with Defendants that Plaintiffs' claims are still insufficiently pleaded in these respects and addresses their arguments regarding each category of claims in turn below. Because the Court previously allowed Plaintiffs leave to amend their claims, and they have again failed to plead facts sufficient to state claims for manufacturing defect and breach of the implied warranty of merchantability, those claims will be dismissed with prejudice.

### A.  The Amended Complaint Again Fails to State a Plausible Negligent Manufacturing Claim against Defendants.

"To plead a viable negligent manufacturing claim, 'it is necessary to allege some facts that would plausibly suggest that the manufacturer failed to exercise a reasonable standard of

5

care during the manufacturing process.'" *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 540 (E.D. Pa. 2021) (quoting *Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 853 (E.D. Pa. 2017)).  Put differently, "[w]ithout any factual allegation as to the nature of what went wrong during the manufacturing process, there is no plausible road to recovery for negligent manufacturing." *Smith*, 251 F. Supp. 3d at 853.

Previously, the Court dismissed Plaintiffs' negligent manufacturing claims because "the Complaint fails to allege the nature of the defect or how it supposedly resulted from a ***manufacturing issue***." (Doc. No. 32 at 8 (emphasis added).)  That issue still exists in the Amended Complaint.  The Amended Complaint states that there was a "malfunction and/or design defect" in Plaintiffs' oven range "which caused the burner control knobs to operate inadvertently and start a fire." (Doc. No. 34 ¶ 18.)  Plaintiffs allege this happened because Defendants "fail[ed] to manufacture. . . a properly functioning product," and that they "manufactur[ed] . . . the product when [they] knew or should have known that the product and/or its component parts would be inadequate for the reasons for which it was purchased." (*Id.* ¶¶ 32, 52.)  As the Court previously discussed in its prior Memorandum in this action (Doc. No. 32), these conclusory allegations do not provide the requisite detail necessary to state a negligent manufacturing claim. (*Id.* at 8–9.)

Plaintiffs attempt to salvage their negligent manufacturing claims by arguing (1) the addition of the UL standards to the Complaint provides sufficient facts to support a negligent manufacturing claim and (2) that they need discovery in order to understand the exact reason why the subject range turned on. (Doc. No. 44 at 9–10.)  Neither argument succeeds.  The UL standard cited by Plaintiffs states that "[t]he control for a surface unit shall require a minimum of two operations to activate the surface unit." (Doc. No. 34 ¶ 25.)  This standard discusses the

*design* of an oven range, not the *manufacture* of one, and it says nothing about potential deficiencies in the manufacture of Plaintiffs' specific range. In fact, Plaintiffs' own brief emphasizes that the issue in this action is SEA's failure to *design* the range in a manner that complied with the UL standard: "Defendants intended to ***design*** a range with knobs that complied with UL 858 standards but that the range they sold ***did not comply with such intended design***." (Doc. No. 44 at 10 (citing Doc. No. 34 ¶ 25, 28) (emphases added).) This merely asserts there was a design problem with the range, not that any error occurred during the manufacturing process. So, Plaintiffs have again stopped short of providing this Court facts sufficient to show how something went wrong in the manufacture of Plaintiffs' range to cause the alleged injury. *See Foge, McKeever LLC v. Zoetis Inc.*, 565 F. Supp. 3d 647, 654 (W.D. Pa. 2021) (dismissing negligent manufacturing claim premised on conclusory allegations that an equine medication departed from its intended design and contained a manufacturing defect); *McGrain*, 551 F. Supp. 3d at 540–41 (dismissing negligent manufacturing claim for failure to allege "facts concerning Defendants' actual manufacturing process"); *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (dismissing negligent manufacturing claims because plaintiff failed to "*identify/explain how* the [product] either deviated from [defendant's] intended result/design or *how* the [product] deviated from other seemingly identical taser models" (emphases in original)).

Plaintiffs' argument that they need "the benefit of discovery" to understand "whether [the subject range turned on because of] a design or manufacturing issue" also fails.[4] (Doc. No. 44 at

---

[4] Plaintiffs' only citation in support of bringing a manufacturing defect claim as well as a design defect claim is *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349 (Pa. 2015). (Doc. No. 44 at 10.) While *Barton* does support the idea that plaintiffs can bring claims under multiple defect theories, the plaintiff in that action pleaded facts that could support both manufacturing and design defect claims. *See id.* at 355–56 (discussing how "when a brand new lawnmower catches fire or explodes after its first use, it could be the result of a defect in its design or manufacture"). Such is not the case here where Plaintiffs'

7

10.)  At this stage, all Plaintiffs have alleged is the potentially negligent design of the subject range.  (*See generally* Doc. No. 34.)  Because they have not pleaded any facts to suggest their range may have been negligently manufactured, any such claims are mere conjecture.  *See Young v. Kann,* 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming dismissal of claims based "merely upon [plaintiff's] own suspicion and speculation").  And conjecture is insufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 557.

Accordingly, the Court finds that Plaintiffs have not pleaded a plausible negligent manufacturing defect claim against Defendants.

### B. The Amended Complaint Again Fails to State a Plausible Strict Liability Claim against Defendants.

Next, Plaintiffs bring strict liability claims (Counts II, V) against Defendants. "Pennsylvania law recognizes three different types of defects that can give rise to a strict-liability claim:  a design defect, a manufacturing defect, and a failure to warn defect."  *State Farm Fire & Cas. Co. v. Traditions of Am., LP,* No. 20-cv-01114, 2021 WL 8362166, at *6 (M.D. Pa. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 1485186 (M.D. Pa. Jan. 28, 2022) (citing *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995)).  Plaintiffs allege only the first two (Doc. No. 34 ¶¶ 36–44, 56–64), and Defendants challenge only the latter of those: manufacturing defect.  (*See* Doc. No. 41.)

"In products liability cases, Pennsylvania follows the formulation of strict liability set out in Section 402A of the Restatement (Second) of Torts," which "allows a plaintiff to recover where their injury was caused by a product in 'a defective condition unreasonably dangerous to the user or consumer.'"  *Smith*, 251 F. Supp. 3d at 847 (quoting *A-Best Prods. Co.*, 665 A.2d at

---

factual allegations support only their argument that the *design* of the subject range may have caused their injury.  (*See generally* Doc. No. 34.)

1170–71). To plausibly plead a strict products liability claim, a plaintiff must allege that: (1) the product is in a defective condition or is unreasonably dangerous; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time it left the manufacturer's control." *Traditions of Am., LP*, 2021 WL 8362166, at *6. "[T]o state a strict liability claim due to a manufacturing defect, [Plaintiffs] must allege 'what constitutes the manufacturing defect.'" *Blanding v. Walmart Inc.*, No. CV 23–5142, 2024 WL 3433321, at *7 (E.D. Pa. July 15, 2024) (internal quotation omitted). The existence of a manufacturing defect that forms the basis of a strict liability claim may be established by either demonstrating "a breakdown in the machine or a component thereof" or "rul[ing] out abnormal use or secondary causes of a malfunction." *Smith*, 251 F. Supp. 3d at 851 (internal quotations omitted).

      Defendants argue that Plaintiffs' manufacturing defect claims are deficient for the same reason their negligent manufacturing claims are deficient: lack of sufficient factual support. (*See* Doc. No. 41 at 12–14.) Plaintiffs respond that "the[] same facts support" both the negligence and strict liability claims. (Doc. No. 44 at 10; *id.* at 9 (arguing only that the new facts regarding the UL standards support denying the motion to dismiss); *see also id* at 6 ("The requirements for Manufacturing Defect and Negligent Manufacturing claims are largely the same.") But as discussed in Section IV.A *supra*, the facts alleged by Plaintiffs only deal with a potential design issue. As with the original Complaint, the Amended Complaint "lacks any allegations either directly attributing the defective condition to a breakdown in the oven range or any of its components or from which the Court can reasonably infer that the purported unintentional operation of the burner control knobs was not due to abnormal use or reasonable secondary causes." (Doc. No. 32 at 14.) So the Court's previous ruling—that "mere conclusory statements that the product was defective as to the way it was manufactured do not satisfy the pleading

9

requirements" of the Federal Rules—applies with equal force here.  (*Id.* (cleaned up) (quoting *CM Regent Ins. Co. v. CAMaster, Inc.*, 22-cv-205, 2022 WL 17721589, at *4 (M.D. Pa. Dec. 15, 2022)); *see also Blair v. AbbVie Inc.*, No. 23-cv-1871, 2025 WL 57198, at *1 (W.D. Pa. Jan. 9, 2025) (dismissing strict liability manufacturing defect claim premised on "allegations [that] are too broad and conclusory to support even [the malfunction] theory of liability" in lieu of direct evidence of a product defect).

Therefore, the Court finds that Plaintiffs failed to plead a plausible strict liability claim due to a manufacturing defect because their Amended Complaint again fails to allege, either directly or circumstantially, what constitutes the manufacturing defect.

### C. The Amended Complaint Again Fails to State a Plausible Breach of Warranty Claim against Defendants.

That leaves Plaintiffs' breach of warranty claims (Counts III, VI) against Defendants. Plaintiffs assert that Defendants breached the implied warranty of merchantability as set forth in 13 Pa. Cons. Stat. §§ 2313, 2314(c).  (Doc. No. 34 ¶¶ 45–49, 65–69.)  Defendants move to dismiss these breach of warranty claims based on Plaintiffs' failure to allege factual support for breach or causation.  (Doc. No. 41 at 14–15; Doc. No. 44 at 6–7.)  The Court agrees.

The implied warranty of merchantability "requires that the goods in question be 'fit for the ordinary purposes for which such goods are used.'"  *Smith*, 251 F. Supp. 3d at 854 (quoting 13 Pa. Cons. Stat. § 2314(b)(3)).  To establish a breach of the implied warranty of merchantability, a plaintiff must allege that the good they purchased from defendant was defective.  *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  A plausible claim for breach of the implied warranty of merchantability must be premised on allegations that "(1) the product malfunctioned; (2) that the plaintiff used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary

causes." *Blanding*, 2024 WL 3433321, at *8; *see Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 565 (W.D. Pa. 2018).

Last year, this Court found that Plaintiffs insufficiently pleaded implied warranty of merchantability claims because they "rel[ied] on conclusory allegations that their oven range 'malfunctioned' due to a 'design defect which caused the burner control knobs to operate unintentionally' and ignite 'combustibles at or near the stove causing fire damages to Plaintiffs' property,' as determined by a 'subsequent investigation,' and they d[id] not allege any facts from which the Court can infer that Plaintiffs used the oven range as intended or reasonably expected by SEA and the absence of reasonable secondary causes of Plaintiffs' property damage." (Doc. No. 32 at 19 (quoting Doc. No. 1-3 ¶¶ 14–15, 32).)  The only new facts Plaintiffs have provided in their Amended Complaint are that "[a]fter the purchase of the subject range, Plaintiffs used the subject range for cooking.  They did not use it for any other purpose." (Doc. No. 34 ¶ 15.)  And they allege that, while they were not present, they believe their pet dog "made inadvertent contact with the front mounted control knobs," which caused them to turn on and start a fire.  (*Id.* ¶ 17; *see also* Doc. No. 44 at 11.)

These new facts do not suffice to state a plausible claim for the implied warranty of merchantability.  Plaintiffs still do not allege facts to suggest that the range was unsuitable for its ordinary purpose (cooking) or that it fell below commercial standards when properly used.  *See, e.g.*, *Altronics*, 957 F.2d at 1105; *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402 (E.D. Pa. 2012) (dismissing implied warranty of merchantability claims where they lacked specific allegations regarding how a fan was "not fit for [its] ordinary purpose").  This case is not like *Barton*, which Plaintiffs cite for support, most critically because Plaintiffs do not allege any intended purpose actions they took with the product at issue which then led to the injury.

*Compare Barton,* 124 A.3d at 358 (finding adequate pleading of unmerchantability when tractor burst into flames after first use) *with* (Doc. No. 34 ¶¶ 14–17 (detailing that the fire began when Plaintiffs were not home due in part to the actions of their pet dog)).

In sum, Plaintiffs have again failed to plausibly plead breach of warranty claims against Defendants, and the Court will dismiss the claims asserted in Counts III & VI of the Complaint.

### D. Leave to Amend Is Not Appropriate.

In their response opposing the motion to dismiss, Plaintiffs have sought leave to again amend their complaint "to conform with the Court's ruling on this motion." (Doc. No. 44 at 12.) Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." And a court should grant leave to amend unless there is one or more of: "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). Here, the final three factors—repeated failure, prejudice, and futility—each cut against Plaintiffs having another chance to amend. Plaintiffs met and conferred with Defendants prior to each of Defendants' motions to dismiss and chose not to amend their claims, and now have twice brought forth facially insufficient pleadings as to portions of three of their claims even after this Court dismissed them. (Doc. Nos. 1-3, 16, 17, 32, 34, 41.) And as this case is moving toward expert discovery, the parties should have certainty regarding the final claims at issue. The Court will thus not allow Plaintiffs leave to amend again.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss. For the same reasons, the Court also dismisses Plaintiffs' identical claims against fictious entities "ABC Manufacturing Company(ies) 1-5" and "ABC Sales Company(ies) 1-5" (Counts VII–XII). *See, e.g.*, *Anderson v. Local 435 Union*, 791 F. App'x 328, 332 (3d Cir. 2019) (affirming district court's *sua sponte* dismissal of complaint against non-moving defendant based on the same grounds raised by moving defendant, where plaintiff "had the opportunity to defend the sufficiency of those identical claims in response to [moving defendant's] motion to dismiss"); *Coulter v. Unknown Probation Officer*, 562 F. App'x 87, 89 n.2 (3d Cir. 2014) (affirming district court's *sua sponte* dismissal of complaint for failure to state a claim against a non-moving defendant based on grounds raised by moving defendants but common to all defendants and where plaintiff had an opportunity to respond). And as Plaintiffs have now failed twice to plead certain claims, the Court finds that further amendment would prejudice Defendants and be futile, and dismisses the portions of Plaintiffs' complaint discussed above with prejudice.

An appropriate Order follows.